W. L. CHURCHILL v. TURNAGE & ORMOND.

(Decided May 11, 1898).

*Action for Accounting and Injunction—Mortgagor and Mortgagee — Usury — Forfeiture of Interest — Time Prices for Goods—Debtor Seeking Equitable Relief— Pleading—Evidence.*

1. Where a complaint in an action to enjoin the sale of land under mortgage and for an accounting, alleged (substantially) that a note and mortgage had no other consideration than the balance due on a prior debt and mortgage of which it was a renewal, and that the difference between the two was usury charged by the mortgagee for indulgence; *Held,* that, under *The Code,* the allegations set out with sufficient distinctness the facts which constitute the alleged usury.

2. Where, in an action to enjoin a sale of land under mortgage, the complaint alleged usury in the debt and the answer admitted that the note and mortgage were in consideration of the balance due on a prior mortgage but in another paragraph alleged a further consideration of several hundred dollars, the exact amount of which the defendant could not remember, and on the trial it appeared that the new mortgage debt exceeded the old one and accrued interest by several hundred dollars for which no consideration was proved; *Held,* that the difference between the true amount of the old debt and the amount named in the new mortgage was usurious.

3. A "time" price charge of ten per cent on the cash price, for supplies furnished under an agricultural lien, being the usual rate of advance, is not usurious.

4. A debtor, seeking the aid of a Court of Equity, will have the usurious element eliminated from his debt only upon his paying the principal and legal rate of interest, the only forfeiture enforced against the creditor being the excess of the legal rate. (CLARK, J., dissents *arguendo.*)

CHURCHILL *v.* TURNAGE.

CIVIL ACTION to enjoin a sale under mortgage and for an accounting, usury being alleged, heard before *Allen*, J., at August Term, 1897 of GREENE Superior Court, on exceptions to the report of a referee to whom the case had been referred under *The Code*. The facts sufficiently appear in the opinion. From a judgment overruling the plaintiff's exceptions, the plaintiff appealed.

*Messrs. Geo. M. Lindsay* and *Shepherd and Busbee* for plaintiff (appellant).

*Messrs. Swift Galloway*, *Y. T. Ormond* and *J. B. Batchelor*, for defendants.

MONTGOMERY, J.:  The plaintiffs executed to the defendants a mortgage upon real estate, on the 27th of December, 1889, for the amount of $3,671.36 evidenced by three bonds of equal amount payable on the first day of January, 1891, 1892 and 1893, respectively, with interest at the rate of 8 per cent per annum. On the 1st day of January, 1894, the plaintiffs executed another mortgage to the defendant Turnage upon the same land to sucure the amount of $3743.89 evidenced by three bonds of equal amount, payable January 1st, 1895, January 1st, 1896, and January 1st, 1897, with interest at 8 per cent. This action was commenced by the plaintiffs for an accounting, and for an injunction to prevent a sale of the land until the account should be stated between the parties. The complaint is inartistically drawn and the allegations as to usury against the defendants are not as clear as the best practice would suggest; but we think that under *The Code* they set out with sufficient distinctness the facts which constitute the alleged usury. It is substantially alleged in the complaint that the debt and mortgage of January

1st, 1894 had no other consideration than the debt secured in the mortgage of 1889, less the payments made upon the last named mortgage, that the mortgage of 1894 was simply a renewal of the mortgage of 1889, and that the difference between the debts mentioned in the two mortgages was usury charged by the defendant, Turnage, for indulgence.    We think that, substantially, the requirements of the law as laid down in *Rountree* v. *Brinson*, 98 N. C., 107, cited by the counsel for the defendants in their argument here, have been complied with in the complaint as to the manner of statement of facts going to show the alleged usury.  The defendants in one section of their answer admitted, out and out, the truth of the plaintiff's allegations that the only consideration of the mortgage of 1894 was the balance due on the mortgage of 1889; but in another section of the answer it was averred that there was a further consideration in the mortgage of 1894 of between $350 and $400, but, in the language of the defendants, "the exact amount the said defendant cannot now remember," which Turnage had advanced and loaned to the plaintiff, and that the same was added to the principal and interest due up to that time on the notes secured by the mortgage of 1889.  The referee found as a fact that a *part* of the consideration of the debt secured under the mortgage of 1894 was the balance of the mortgage of 1889, but no where does the referee find *what* the other part of the consideration of the mortgage of 1894 was; indeed he could not have found any other consideration from the evidence before us.    The plaintiff excepted to that finding of the referee and insisted that there was no evidence before the referee upon which he could or ought to have made that finding, and that he ought to have found that there was no other consideration for the debt secured in

the mortgage of January 1st, 1894 except the balance due on the mortgage of 1889; and upon examination of the evidence we are of that opinion. Turnage himself testified that the plaintiff paid him (he averring that he was then the sole owner of the mortgage of 1889) in November or December, 1890, $1000, on the mortgage of 1889 and $300 on the same in 1891 (in his own words) "might have been a little more or a little less." He seldom seemed to be accurate as to his business transactions with the plaintiff except possibly in those in which it was to his interest to be definite. He testified further that when he took the mortgage of January, 1894, he computed the amount due on the three notes secured in the mortgage of 1889, and took the three notes secured in the mortgage of January 1st, 1894. He testified to nothing about the $350 or the $400, which he averred in his answer that he had advanced to the plaintiff and added in the mortgage of 1894. There was no testimony going to show any other consideration for the debt secured in the mortgage of 1894, except the amount due under the mortgage of 1889. The transaction was, even by the evidence of Turnage himself, a simple renewal of the debt secured in the mortgage of 1889 and, by a simple mathematical calculation, the debt secured in the mortgage of 1894 exceeded the debt due under the mortgage of 1889, between four and five hundred dollars. That calculation is based upon the payment of $300 (admitted to have been paid by the plaintiffs in *1891*) as having been made on the 1st day of January, 1891—most strongly against the interest of the creditor. Upon this evidence the referee ought to have found that the difference between the true amount of the debt due under the 1889 mortgage and the amount named and secured in the mortgage of 1894, was usurious and

should not have been allowed by the referee.    This difference was carried forward as is admitted by all the parties and is embraced in the mortgage of the 9th of November, 1894 and ought to have been eliminated in the finding of the referee with the interest on it from the first day of January, 1894.

The plaintiff's second exception cannot be sustained. The defendants charged the usual time prices for goods and supplies furnished the plaintiffs, an average of about ten per cent more than for cash, without interest, and we do not think that was unlawful.    No interest was charged on the advancements.    The other exceptions of the plaintiff to the rulings of his Honor on the referee's report affect the defendant's right to recover any interest whatever after the discovery of usurious interest in the transactions between the parties.    In the case of *Moore* v. *Beaman,* 112 N. C., p. 558, the justice who delivered the opinion of the court expressed the view, which he said was his individual opinion and not necessary to the decision of that case, that where usury was received no interest ought to be allowed, and the Justice who writes this opinion might be disposed to coincide with that view, but the decisions of this court are too numerous and too strong the other way to be overruled.    These decisions are numerous and uniform and to the effect that a *debtor* seeking the aid of a court will have a usurious element eliminated from his debt only upon his paying the principal and legal interest. *Ballinger* v. *Edwards,* 39 N. C., 449; *Purnell* v. *Vaughan,* 82 N. C., 134; *Burwell* v. *Burgwyn,* 100 N. C., 389. The defendants, Turnage and Ormond, ought not to have been allowed by the referee interest at the greater rate than 6 per cent on the amounts brought over from one year to the other in the crop liens executed by the

plaintiffs to the defendants from the year 1891 and '95, inclusive of both, because of usury charged and secured in each of the crop liens upon the cash advanced in the account of 1891. In *Grant* v. *Morris*, 81 N. C., 160, it was held that the mere entry of a usurious claim upon an account which was neither recognized nor paid by the debtor was not "a charging" within the meaning of the Act of 1876, '77. There, the court said that the words "a taking, reserving or charging" imply something more to be done to the loss or detriment of the debtor than the mere presentation of an illegal claim, which is neither recognized nor paid. In the case before us, the usurious interest on the cash advanced in 1891, under the crop lien of that year, was not only charged but it was carried forward in the crop liens of each succeeding year to 1895, inclusive, and was recognized by the plaintiffs as a debt against them and was secured by a lien. The sum of $46.60 usury collected by Turnage (admitted by him) with interest from January 9, 1893, must be deducted from the amount of the mortgage of November 9, 1894. The judgment below may be modified in accordance with this opinion with the consent of the parties, and if that is not done the report will be recommitted to the referee that he may make another report in conformity with this opinion.

Modified and affirmed.

CLARK, J., dissenting in part: Under the usury law in force up to 1866, whenever usury was shown the entire contract was void. This was so severe that the courts felt moved to modify its stringency by holding that where the debtor had to apply to the court for an injunction the court would not help him unless he would pay the debt and legal interest. *Ballinger* v. *Edwards*, 39 N. C., 449. The Act of 1866 in reducing the penalty

to mere loss of interest also made this apply, whether the debtor or creditor was the moving party, by providing that where usury was charged no interest should be allowed "either in law or equity". The attention of the Court was not brought to this change, for it was adverted to in no decision till its effect was pointedly and ably presented by counsel in *Moore* v. *Beaman*, 112 N. C., 558—inthe meantime the Court having followed *Ballinger* v. *Edwards*, without question. In*Moore* v. *Beaman*, the Court's attention was not only called to the above change in the Act of 1866 forbidding the recovery of interest "either in law or equity" when usury was charged, but the subsequent legislative construction in *The Code*, Section 3836, which makes usury a "forfeiture of the entire interest which the note or other evidences of debt carries with it." There is no exception in the statute, and, equity as a separate jurisdiction being abolished, there is no ground upon which the Court can interpolate any exception, Indeed, it will be a virtual repeal of the usury law if a creditor by dexterously securing himself by a mortgage with power of sale can secure himself against the "forfeiture of all interest" which the statute law visits, without exception, upon every "note or other evidence of debt" which is in any way tainted with usury. When this point was presented in *Moore* v. *Beaman*, the point was not necessary to a decision, and the above view was expressed only as that of the justice writing the opinion. But the Court and the profession understood it as a virtual construction of *The Code*, Section 3836, and accordingly in the very next volume, in *Ward* v. *Sugg*, 113 N. C., 489, in which case the plaintiff was a debtor asking an injunction against a sale under mortgage, the Court held that all interest was forfeited, and (at bottom of page 492)

expressly quote with approval *that very part* of *Moore* v. *Beaman*, "the contract, usury being pleaded, is simply a loan of money, which in law bore no interest", and in the same opinion (on page 496) it again refers to and adopts *Moore* v. *Beaman* on that point. Thus the expression in *Moore* v. *Beaman* was expressly adopted and made the judgment of the Court in *Ward* v. *Sugg* and even the dissenting opinion in that case does not controvert that *Moore* v. *Beaman* was the law.

In *Atkins* v. *Crumpler*, 118 N. C., 532, *Moore* v. *Beaman* is cited as authority, though it is true that in that case the plaintiff was the creditor. In *Smith* v. *B. & L. Asso.*, 119 N. C., 249, 255, in a case in which (like *Ward* v. *Sugg*) the debtor was the plaintiff, the Court expressly cite and reaffirm *Ward* v. *Sugg* and *Moore* v. *Beaman* as the law under *The Code*, Section 3836, and hold that usury, being shown, "the contract is simply a loan of money bearing no interest". It would be an anomaly under this statute for the Court to rule that the debtor must pay the principal debt "with interest" when the statute provides that, if he does, the debtor can immediately sue to "recover back double the interest so paid." *Roberts* v. *Ins. Co.*, 118 N. C., 429.

The legislative construction is also that of *Moore* v. *Beaman*, *Ward* v. *Sugg* and *Smith* v. *B. & L. A.*, *supra*, for in the Act of 1895, Chapter 69, it is expressly provided that if the interest is paid the debtor may recover "twice the amount of interest paid and also the forfeiture of the entire interest"; *cui bono* order the debtor to pay the interest? This is now the settled law both upon the decisions and the legislation above cited. To allow a party to evade the "forfeiture of usury" simply because he has secured himself by a mortgage with

122—28

a power of sale would be a nulliffcation of the protection intended by the statute, except that the debtor could bring another action "to recover back twice the amount and the forfeiture of interest." Our decision (119 N. C., 255) and the Act of 1895 both expressly say the penalty is "forfeiture of all interest and recovery of double the interest paid." The Court should abide by these recent decisions, which are in accord with late legislation and have proved a salutary protection to the oppressed.